UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| JOEY A. THOMPSON | ) | |
| | ) | |
| V. | ) | NO. 2:14-CV-64 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is a judicial review of the defendant Commissioner's final decision denying the plaintiff's application for disability insurance benefits under the Social Security Act. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14] while the defendant has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 45 years old at the time of his alleged disability onset date on August 8, 2008. He has a high school education. It is undisputed that he cannot return to any of his past relevant work.

The medical history of this plaintiff is accurately summarized in the defendant's brief as follows:

> The medical evidence since Plaintiff's alleged onset date of disability shows that he suffered a cervical strain and sprain following a motor vehicle accident in August 2010 (Tr. 277-83). Cervical spine x-rays showed middle and lower cervical spine degenerative changes with no acute compression deformity or subluxation (Tr. 284-85).
>
> Plaintiff saw Kathy Jo Miller, M.Ed., on October 27, 2010, for a consultative mental examination (Tr. 387). Plaintiff drove himself to the examination and was neat, clean, and appropriately dressed (Tr. 387). He reported smoking one-half package of cigarettes per day but stopped drinking alcohol and marijuana 10 years earlier (Tr. 387). Dr. Miller observed that Plaintiff had no speech problems, displayed age-appropriate fine motor skills, and walked with a slight limp (Tr. 387). Plaintiff seemed socially confident and comfortable (Tr. 387). Plaintiff was alert and oriented but appeared tired and worn (Tr. 389). He was polite and cooperative, maintained good eye contact, repeated three words after five minutes, and completed serial sevens quickly after stumbling over level one (Tr. 389). Plaintiff also completed simple math problems quickly and correctly, identified the current and past two presidents, interpreted two common proverbs appropriately, and did not manifest any loose associations or illogical language (Tr. 389). Dr. Miller noted that Plaintiff appeared to possess average intelligence and was emotionally and mildly depressed (Tr. 389). Regarding his activities of daily living, Plaintiff reported that he watched the news and was adamant that he did nothing around the house or yard (Tr. 389). However, he stated that he occasionally went to the grocery store with his

wife, cared for a pet dog regularly, prepared simple meals, watched television, and could drive himself where he needed to go (Tr. 389).

Plaintiff's social skills were adequate and he related well with Dr. Miller (Tr. 389). He was polite and cooperative, and communicated in a clear and coherent manner (Tr. 389). Dr. Miller found that Plaintiff had the judgment necessary to handle his own financial affairs (Tr. 390). She diagnosed depression, NOS (not otherwise specified), moderate and untreated; alcohol dependence and cannabis abuse in remission; estimated average intellectual functioning; a history of a below the knee amputation; tendonitis in both elbows; back, hip, and knee pain; and Tietze disease in the shoulders; and a current global assessment of functioning (GAF) score of 60 (Tr. 390).

Dr. Miller found that Plaintiff's ability to understand and remember was not significantly limited (Tr. 391). His ability to sustain concentration was adequate (Tr. 391). Persistence was limited by markedly diminished motivation and loss of interest secondary to depression (Tr. 391). Dr. Miller also found that Plaintiff's social interaction was limited by anxiety, irritability, and anger secondary to depression (Tr. 391).

On November 1, 2010, Plaintiff saw Krish Purswani, M.D., for a consultative disability examination (Tr. 311). Plaintiff's medical history included left leg bone grafts in the 1980s, a left below the knee amputation in 1987, and left stump cysts in 1994 (Tr. 312). Plaintiff complained of occasional chest pain and shortness of breath, and denied vomiting, diarrhea, seizures, or stroke (Tr. 312). He also reported smoking one-half to one package of cigarettes per day for 35 years (Tr. 312). On examination, Plaintiff was comfortable and in no apparent distress (Tr. 313). He displayed normal speech, hearing, gait, and station (Tr. 313). He used a cane and was able to walk the length of the corridor and back - about 200 feet without the cane, so "it is not medically necessary" (Tr. 313). Plaintiff was also able to get on and off the table without help and was able to follow instructions (Tr. 313). His neck was non-tender with normal flexion, extension, and rotation (Tr. 313). A cardiovascular examination showed normal rate and rhythm without murmur, rubs, or gallops (Tr. 313). Plaintiff's lungs were clear to auscultation (Tr. 313). His extremities showed no clubbing, cyanosis, or edema (Tr. 313). Both shoulders, elbows, wrists, hands, and hips were non-tender with normal ranges of motion (Tr. 313). There was a below the knee amputation on the left, and the stump was clean, dry, and well-healed (Tr. 313). There was also an oblique scar that was old and well-healed on the left medial knee (Tr. 313). The right knee was larger than the left and both knees were stable and non-tender with normal ranges of motion (Tr. 313-14). Plaintiff's back showed no apparent scoliosis, was nontender, and showed normal range of motion (Tr. 314).

Dr. Purswani assessed status-post left below knee amputation with a work history after onset, bilateral elbow pain with work history after onset, back pain, shortness of breath, emphysema, hypertension, chest pain with no good evidence of angina, depression, ringing in the ears, and tobacco abuse (Tr. 314). The doctor opined that Plaintiff could frequently lift 30 pounds from the floor one-half of the time in an eight-hour day; stand for six hours a day and walk for five hours a day for a total of

3

six hours in an eight-hour day; sit for eight hours a day; and manage his own affairs (Tr. 314).

Dr. Purswani also completed a medical source statement and indicated that Plaintiff could continuously lift or carry up to 20 pounds, frequently lift 21 to 50 pounds, and never lift or carry over 50 pounds (Tr. 315). He could sit for three hours at one time for a total of eight hours in a day, stand for one hour at a time for a total of six hours in an eight-hour day, and walk for 45 minutes at one time and for a total of five hours in an eight-hour day (Tr. 316). He required a cane to ambulate and could ambulate 200 feet without a cane (Tr. 316). The cane was not medically necessary and Plaintiff could use his free hand to carry small objects (Tr. 316). He could use each hand to reach, reach overhead, handle, finger, feel, and push/pull frequently (Tr. 316-17). Plaintiff could use his feet to operate foot controls frequently (Tr. 317). He could occasionally climb stairs and ramps, never climb ladders or scaffolds, and could frequently balance, stoop, kneel, crouch, and crawl (Tr. 317). He could never tolerate exposure to unprotected heights, occasionally tolerate exposure to moving mechanical parts, frequently operate a motor vehicle, and continuously tolerate humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold and heat, and vibrations (Tr. 318-19). He could perform activities like shopping, travel without a companion, ambulate without using a wheel chair or a walker or two canes or two crutches, use standard public transportation, prepare a simple meal, care for personal hygiene, and sort, handle and use paper/files (Tr. 319).

Non-examining state agency psychologist, Norma J. Calway-Fagan, Ph.D., reviewed the evidence on November 22, 2010, and indicated that Plaintiff's medically determinable impairments included a depressive disorder, NOS; anxiety disorder, NOS; and alcohol dependence and cannabis abuse in remission (Tr. 329-34). The doctor indicated that Plaintiff had a mild restriction in activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 336). In summarizing her findings, Dr. Calway-Fagan noted that Plaintiff was not currently taking medications, had no inpatient or outpatient mental health treatment, and was able to care for himself, attend church, drive, and go out alone (Tr. 338). She opined that the evidence supported no more than moderate mental health limitations "at worst" (Tr. 338).

Dr. Calway-Fagan also completed a mental RFC assessment and indicated that Plaintiff was not significantly limited or moderately limited in every listed category of work-related mental function (Tr. 340-41). She also indicated that Plaintiff could understand and remember one to three step tasks, concentrate and persist on such tasks for two-hour periods in an eight-hour day with routine breaks, interact superficially with others, and adapt to limited changes and set limited independent goals (Tr. 342).

On February 7, 2011, a non-examining state agency medical consultant, James O. Finney, Jr., D.O., reviewed the record and found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours in an 8-hour workday; and sit with normal breaks for a total of about 6 hours in an 8-hour workday (Tr. 347). Plaintiff's ability to push and/or pull was limited in his

4

lower extremities (Tr. 347). Plaintiff could occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, and occasionally stoop, kneel, crouch, and crawl (Tr. 348). Plaintiff had no manipulative, visual, or communicative limitations (Tr. 349-50). Environmental limitations included avoiding concentrated exposure to extreme cold and fumes, odors, gases, or poor ventilation, and avoiding all exposure to hazards such as machinery or heights (Tr. 350).

Medical records from Johnson City Downtown Clinic and East Tennessee State University dated September 20, 2011, through February 9, 2012, show Plaintiff sought treatment for hip pain, depression, hyperlipidemia, respiratory problems, diarrhea, coughing, neck pain, and paranoia (Tr. 361-63). On February 9, 2012, Plaintiff reported that he experienced a couple of panic attacks with the most recent occurring the previous night, left ear popping, right ear pain, and upper back muscle pain (Tr. 358). On examination, Plaintiff's right and left ears were unremarkable, his lungs were clear to auscultation with normal respiratory effort, a cardiovascular examination showed regular rate and rhythm, and Plaintiff was oriented to time, place, person, and situation with appropriate mood and affect (Tr. 359).

On June 6, 2012, Plaintiff saw Steven Lawhon, Psy.D., for a consultative psychological evaluation (Tr. 369). Plaintiff drove himself to the examination and arrived on time (Tr. 369). Dr. Lawhon observed that Plaintiff was depressed and moody (Tr. 370). Plaintiff admitted to suicidal ideation but denied any current plan or ideation (Tr. 370). He denied hallucinations or delusions and recalled two presidents but did not complete serial sevens or common proverbs (Tr. 370). He did complete serial threes, and Dr. Lawhon estimated Plaintiff's intelligence to be in the low average to borderline range (Tr. 370). Plaintiff was rational and oriented and did not display evidence of a thought disorder (Tr. 370). He appeared mildly to moderately depressed, and was irritable, moody, and easily frustrated during testing (Tr. 370-71). On memory testing, Plaintiff did not display any evidence of a significant memory impairment (Tr. 371). Dr. Lawhon diagnosed depression due to medical reasons, borderline intellectual functioning, psychosocial stressors including severe health problems, a present GAF score of 58, and a past GAF score of 70 (Tr. 371). He stated that Plaintiff's ability to understand and remember was not significantly limited, his ability to sustain concentration and persistence was moderately limited, his social interaction was not significantly limited, and his work adaptation was mildly to moderately limited (Tr. 371).

Plaintiff's full-scale IQ score of 70 placed him in the borderline range of intelligence (Tr. 373). His activities of daily living included going to the grocery store, occasionally attending church, and watching television (Tr. 373). He had friends and could relate to others, and was capable of managing his own funds (Tr. 373). Plaintiff's scores on the Wide Range Achievement Test suggested that his intellectual functioning may be somewhat higher than his current test scores suggested (Tr. 373). Dr. Lawhon also completed a mental medical source statement and indicated that Plaintiff had no limitations in his abilities to understand, remember, and carry out instructions and no limitations in his abilities to interact appropriately with others or respond to changes in a routine work setting (Tr. 374-

5

75).

    Medical records from East Tennessee State University dated June 8, 2012, show that Plaintiff complained of increased chronic low back pain, but he had been out of all medications for about one month (Tr. 397). He reportedly stopped smoking for approximately 60 days but started again (Tr. 397). Plaintiff reported insomnia and back pain, but a review of all other systems was negative (Tr. 397). Plaintiff's lungs were clear with normal respiratory effort, he had regular cardiovascular rate and rhythm, and he was oriented and demonstrated appropriate mood and affect (Tr. 398).

    On October 5, 2012, Plaintiff reported that he had been out of Singular medication and experienced a little more shortness of breath (Tr. 400). He had no new health questions or concerns (Tr. 400). Plaintiff was positive for dyspnea but all other systems were negative (Tr. 400). A physical examination was the same as the previous examination on June 8, 2012 (Tr. 401).

[Doc. 17, pgs. 3-10].

In addition to these records, the ALJ also called Dr. Theron Blickenstaff to testify at the hearing as a medical expert. Dr. Blickenstaff was asked to review the medical evidence of record. He opined that those records would support a lifting limitation of no more than 30 pounds occasionally and 15 pounds frequently; standing and walking no more than four hours out of eight; no climbing of ladders, ropes or scaffolds; no more than occasional performance of other postural activities; and no exposure to high levels of vapors, fumes and dust. (Tr. 56-57).

Another medical expert, Dr. Olin Hamrick, testified about the plaintiff's mental situation. He reviewed the evidence regarding the plaintiff's mental conditions and opined that the plaintiff was capable of simple, unskilled work. (Tr. 56-61).

At the administrative hearing, Bentley Hankins, a vocational expert ["VE'] was called by the ALJ. The ALJ asked him the following question:

"let's say, Mr. Hankins, Dr. Blickenstaff and, and Dr. Hamrick are 100% correct.

6

So, that'd be thirty and fifteen on lifting, stand four hours which I guess would be sit/stand, no climbing ladders, no posturals, limited exposure to vapors, and the we would want simple work, borderline intelligence, would there be any jobs?

The VE responded:

"there are unskilled occupations that can be performed with those functional limitations. Some of the more common examples would include first, a cashier, such as a dining room or parking lot cashier, also some production occupations such as a small parts, or a bench assembler. A specific example would be a door locks assembler. There are also production inspectors such as a surgical instruments inspector. As far as numbers for these types of occupations, in the national economy at the unskilled level, there are approximately 1.65 to 1.7 million positions. In Tennessee, there are approximately 32 to 34 thousand positions."

(Tr. 62).

On November 13, 2012, the ALJ rendered his hearing decision. He found that the plaintiff had severe impairments of a "status post left below knee amputation; degenerative disc disease; chronic obstructive pulmonary disease; an affective disorder; history of alcohol dependence and cannabis abuse." (Tr. 13). He found that the plaintiff's hypertension was not confirmed by the evidence to be a severe impairment. He also found that plaintiff's allegation that he suffered from Tietze Syndrome was not confirmed and no significant limitations were shown. Likewise, he found that there was no evidence of vocational restrictions from inner and outer tendonitis. (Tr. 14).

The ALJ stated that the plaintiff had the residual functional capacity ["RFC"] "to perform light work...except the claimant will require a sit/stand option every four hours, no climbing of ladders and no postural activities. He is limited to simple, repetitive, non-detailed (unskilled) work tasks; contact with co-workers and the public should be casual, and contact with supervision should be direct and non-confrontational. He can adapt to routine changes in the workplace as infrequent and gradually introduced." (Tr. 16). It should be

7

noted here that the exertional demands of light work are being capable of lifting 20 pounds occasionally and 10 pounds frequently.

He then discussed the medical evidence as outlined above (Tr. 18-21). He found that the plaintiff's subjective complaints were less than credible, primarily based upon discrepancies between information he gave to the consultative psychological examiner as opposed to information provided in questionnaires. (Tr. 21).

The ALJ gave "great weight" to the expert opinions of Dr. Purswani, the State Agency physical and psychological consultants, psychological examiners Kathy Jo Miller and Dr. Steven Lawhon, Dr. Blickenstaff and Dr. Hamrick (Tr. 22).

He found that the plaintiff was unable to do his past relevant work. However, given his age, education and work experience, the ALJ found based upon the testimony of the VE that there were jobs in the national economy which he could perform. Thus, he found that the plaintiff was not disabled. (Tr. 23-24).

Plaintiff complains first that the ALJ's RFC finding of light work is not consistent with his hypothetical question to the VE, which indicated a lifting capacity of 30 pounds occasionally and 15 pounds frequently. He also asserts that the ALJ erred in not including the plaintiff's subjective complaints in his question to the VE. Next, plaintiff argues that the case should be remanded because the ALJ did not ask the VE if his testimony regarding the requirements of the jobs he identified was consistent with the *Dictionary of Occupational Titles* ["DOT"] as set forth in *Social Security Ruling 00-4p*. Finally, the plaintiff asserts that since the plaintiff turned 50 on October 26, 2012, or two and one-half weeks before the ALJ rendered his hearing decision on November 13th, the ALJ "should have evaluated this claim

8

pursuant to *Social Security Ruling 83-12* discussing claims with a range of work where the higher classification leads to a finding of 'not disabled' and the lower classification leads to a finding of 'disabled.'"[1]

Plaintiffs initial complaint, that the RFC found by the ALJ was more limited than that posed to the VE, and his complaint regarding the ALJ's failure to ask the VE if the identified jobs was consistent with the DOT, are intertwined. Obviously, if the jobs identified by the VE required plaintiff to have a lifting capacity of 30 pounds occasionally and 15 pounds frequently, as opposed to the 20 and 10 pound requirements of light work, then the ALJ would not be able to rely upon the testimony of the VE as proof that plaintiff can perform substantial gainful activity. Likewise, *Social Security Ruling 00-4p* does state that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator *will* inquire [emphasis added], on the record, as to whether or not there is such consistency [between the VE's testimony and the exertional requirements of the identified jobs in the DOT]."

With respect to the identified jobs, they are, as stated by the Commissioner, categorized as requiring light level exertion. The source of this information is, in fact, the DOT itself. Although the ALJ did not ask the VE to testify as to this, the ALJ did find that VE's testimony was consistent with the DOT (Tr. 24). Since all of the identified jobs only require light exertion, they are thus consistent with the ALJ's RFC finding of light exertion.

As to *Social Security Ruling 00-4p*, it requires an ALJ to "identify and obtain a

---

[1] These are the only errors alleged by the plaintiff, and any future argument on other issues not raised herein are waived.

9

reasonable explanation for any conflicts between occupational evidence provided by a VE and information in the...[DOT]..." *Johnson v. Commissioner of Social Security*, 535 Fed. Appx. 498, 508 (6th Cir. 2013). Here, there **were no conflicts to resolve**. However, *Social Security Ruling 00-4p* does place an affirmative duty on the VE to "inquire, on the record, as to whether or not there is such consistency." However, *Johnson, supra,* did not find it fatal for the ALJ to fail to do so when no conflict existed, and cited *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) which held "'the ALJ's error in not inquiring about potential conflicts [to be] harmless' where no conflicts existed between the VE's tesimony and the DOT's job descriptions.'" *Id.* The Court concludes that the error is harmless in this instance.

With regards to the ALJ's failure to include the plaintiff's subjective complaints in his hypothetical to the VE, the Court sees no basis for setting aside the ALJ's finding that the plaintiff was not credible in claiming restrictions inconsistent with the found RFC.

Plaintiff also asserts that the ALJ erred in not utilizing *Social Security Ruling 83-12*. However, the end policy of that ruling is that the ALJ should "consult a vocational resource" to determine how the occupational base is affected with respect to a person who falls between different levels in the Vocational Guidelines. The ALJ did precisely that and a substantial number of jobs were identified.

As stated at the outset of this report and recommendation, the Court is limited to a review of the ALJ's decision for substantial evidence and errors of law, without respect to how the Court would have evaluated the evidence if it were the trier of fact. This was an extremely close case, however, there was substantial evidence to support the ALJ's findings, and he committed no errors of law that were more than "harmless." Accordingly, the Court

10

respectfully recommends that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[2]

        Respectfully submitted,

         s/ Dennis H. Inman
        United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).